**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

AGUSTIN GARCIA,
*on behalf of himself, FLSA Collective Plaintiffs,*
*and the Class,*

               Plaintiff,

     v.

SKYLINE GROUP GLOBAL CORPORATION,
     d/b/a SKYLINE CONSTRUCTION,
SKYLINE CARTING INC.
     d/b/a SKYLINE CONSTRUCTION,
DISMANTLING CONSULTING, LLC, and
GEORGE FOTIADIS,

               Defendants.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

---

Plaintiff, AGUSTIN GARCIA (hereinafter, "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this class and collective action Complaint against SKYLINE GROUP GLOBAL CORPORATION, d/b/a SKYLINE CONSTRUCTION, SKYLINE CARTING INC. d/b/a SKYLINE CONSTRUCTION, DISMANTLING CONSULTING, LLC ("Corporate Defendants" or "Defendants"), and GEORGE FOTIADIS ("Individual Defendant"; and, together with Corporate Defendant, "Defendants"), and states as follows:

## INTRODUCTION

1.     Plaintiff alleges that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including unpaid overtime, due to time shaving; (2) statutory penalties; (3) liquidated damages; and (4) attorneys' fees and costs.

2.     Plaintiff further alleges that, pursuant to New York Labor Law ("NYLL") and the New Jersey Wage and Hour Law ("NJWHL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) unpaid spread of hours premiums; (3) statutory penalties; (4) liquidated damages; and (5) attorneys' fees and costs.

3.     Plaintiff further alleges that, pursuant to the New Jersey Wage and Hour Law ("NJWHL") and the New Jersey Wage Payment Law ("NJWPL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time shaving; (2) statutory penalties; (3) liquidated damages; and (4) attorneys' fees and costs.

4.    Plaintiff additionally alleges, on behalf of himself and others similarly situated, that Defendants willfully filed fraudulent tax information returns regarding Plaintiff and Class Members with the Internal Revenue Service ("IRS"), in violation of 26 U.S.C. § 7434.

5.    Plaintiff further alleges that Defendants breached their contract with Plaintiff and Class Members by failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA").

6.    Plaintiff additionally alleges that, in retaining these sums for themselves, Defendants unjustly enriched themselves at the expense of Plaintiff and Class Members.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

8.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

9.      Plaintiff, AGUSTIN GARCIA, is a resident of Queens County, New York.

10.     Individual Defendant owns and operates the Corporate Defendant in this matter.

11.     During all relevant times, Plaintiff performed work for Defendants' Skyline Group Global Corp. d/b/a Skyline Construction and was compensated by that entity.

12.     Individual Defendant owns and operates the Corporate Defendants in this matter as a single integrated enterprise. Corporate Defendants' construction companies operate in New York State and New Jersey. Although Defendants' companies have different names, they effectively operate as one single company, under the common control of the Individual Defendant.

13.     At all relevant times, Defendants SKYLINE GROUP GLOBAL CORPORATION, d/b/a SKYLINE CONSTRUCTION, SKYLINE CARTING INC. d/b/a SKYLINE CONSTRUCTION, and DISMANTLING CONSULTING, LLC have operated as a single integrated enterprise under the common control of the Individual Defendant. Specifically, the Companies engage in related activities, share common ownership, and have a common business purpose.

14.     SKYLINE GROUP GLOBAL CORPORATION d/b/a SKYLINE CONSTRUCTION is a foreign corporation, organized under the laws of the State of New Jersey,

with a principal place of business and address for service of process located at 316 Monroe Street. Carlstadt, NJ 07072.

15.     SKYLINE CARTING INC. d/b/a SKYLINE CONSTRUCTION is a foreign corporation, organized under the laws of the State of New Jersey, with a principal place of business and an address for service of process located at 201 Bergen Turnpike, Little Ferry, NJ, 07643.

16.     DISMANTLING CONSULTING, LLC is a foreign corporation, organized under the laws of the State of New Jersey, with a principal place of business and address for service of process located at 13 Elena Court, Monroe Township, NJ, 08831.

17.     Individual Defendant GEORGE FOTIADIS is the founder and owner of Corporate Defendants. GEORGE FOTIADIS exercises operational control as it relates to all employees including Plaintiff, FLSA Collective Plaintiffs, and the Class. GEORGE FOTIADIS frequently visits the Companies. GEORGE FOTIADIS exercises the power to (and also delegates to managers and supervisors the power to) fire and hire employees, supervise and control employee work schedules and conditions of employment, and determine the rate and method of compensation of employees including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all times, employees of the companies may complain to GEORGE FOTIADIS directly regarding any of the terms of their employment, and GEORGE FOTIADIS would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedule, compensation, or terminating or hiring such employees. GEORGE FOTIADIS exercised functional control over the business and financial operations of all Corporate Defendants. GEORGE FOTIADIS had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and Class Members, and could reprimand employees.

18.     At all relevant times, each Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

19.     At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the business operated by Defendants.

20.     Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

21.     Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all current and former non-exempt employees, including scaffolders, laborers, builders, and construction workers among others, employed by Defendants on or after the date that is six years before the filing of this complaint ("FLSA Collective Plaintiffs").

22.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs: (i) unpaid wages, including unpaid overtime, due to time shaving; (ii) liquidated damages; and (iii) attorneys' fees and costs. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

23.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names

and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## MULTI-STATE RULE 23 CLASS ALLEGATIONS

## NEW YORK AND NEW JERSEY

24.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all current and former non-exempt employees, including scaffolders, laborers, and construction workers, among others employed by Defendants on or after the date that is six years before the filing of this complaint, as defined herein (the "Class Period").

25.     All said persons, including Plaintiff, are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

26.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number is based are presently within the sole control of Defendants, and there is no doubt that there are more than forty members of the Class.

27.     Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices

of Defendants of: (i) unpaid wages, including overtime wages, due to time shaving; (ii) failing to provide proper wage statements per requirements of NYLL; (iii) failing to properly provide wage notices to Class Members, at the date of hiring and annually, per requirements of NYLL; (iv) failing to pay spread of hours premiums, (v) fraudulently filing tax returns, and (vi) breach of contract.

28.    With regards to the Class Members employed in the State of New Jersey, Defendants also (i) failed to provide proper wage statements to them per requirements of the NJWPL; and (ii) failed to properly provide wage notices to them, at their date of hiring and at any changes in pay rates or paydays thereafter, per requirements of the NJWPL, (iii) fraudulently filing tax returns, and (iv) breach of contract.

29.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiff and other Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

30.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

31.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the

unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

32.     Defendants and other employers throughout the state violate NYLL, NJWHL and NJWPL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

33.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.  Whether Defendants employed Plaintiff and the Class within the meaning of NYLL;

b.  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and Class Members properly;

c.  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d.  Whether Defendants properly notified Plaintiff and Class Members of their hourly rates;

e.  Whether Defendants properly compensated Plaintiff and Class Members for all hours worked, including overtime hours;

f.  Whether Defendants compensated Plaintiff and Class Members for their required spread of hours premiums;

g.  Whether Defendants caused time shaving by not paying Plaintiff and Class Members for all actual hours worked;

h.  Whether Defendants provided wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of NYLL;

i.  Whether Defendants provided proper wage statements to employees as required under NYLL;

j.  Whether Defendants filed fraudulent tax returns; and

k.   Whether Defendants' breach of contract their contract with Plaintiff and Class Members in failing to pay employer payroll taxes for Plaintiff and Class Members, as required by the Federal Insurance Contribution Act ("FICA").

## STATEMENT OF FACTS

34.   In or about June 2015, Plaintiff AGUSTIN GARCIA was hired by Defendants to work as a laborer for Defendants' SKYLINE GROUP GLOBAL CORPORATION d/b/a Skyline Construction. During his employment, Plaintiff was assigned to perform work for Defendants at different sites throughout NYC, primarily in Manhattan. Plaintiff was employed by Defendants until in or about August 2022, when he was terminated.

35.   During the entire duration of his employment with Defendants, Plaintiff held the title of laborer. His duties included cutting and installing drywall, framing rooms, installing fixtures, loading and unloading trucks and assisting on projects as needed. On a daily basis, Plaintiff was scheduled by his foreman to work at different job sites around New York City. At each site, Plaintiff had the same foreman and was assigned to a work group with other scaffolding employees and laborers. Plaintiff's team was generally the same, regardless of which site he was assigned to. FLSA Collective Plaintiffs and Class Members were similarly assigned on a daily basis to work at different job sites.

36.   During the entire duration of his employment, Plaintiff was scheduled to work seven days a week either from 7:00 a.m. to 3:00 p.m. or from 8:00 a.m. to 4:00 p.m. Additionally, Plaintiff was often required to work a second full shift, after his first shift, from 5:00 p.m. until 12:00 a.m., sometimes up to five days a week.

37.   Plaintiff never clocked in or out on a timeclock machine as Defendants did not utilize one. Instead, Defendants required Plaintiff to sign an attendance sheet at the start of each

shift for the purposes of time recording. The sheet had no times on it, it was simply a record of who showed up to the work site. Plaintiff was then paid for eight (8) hours or work for each shift that he signed the attendance sheet for, regardless of how long he actually worked. However, in spite of this pay structure, and Plaintiff's given schedule, Plaintiff was required to show up to the work ten (10) minutes early each day and stay anywhere from fifteen (15) to thirty (30) minutes after the end of his shift. No matter when he left, Plaintiff was always only paid for eight (8) hours of work. This resulted in approximately four hours and forty minutes of unpaid work each week. FLSA Collective Plaintiffs and Class Members were similarly required to clock-in using this system and as a result, were similarly uncompensated for their additional time beyond the scheduled eight (8) hour shift.

38.     Further, although Plaintiff's scheduled time always resulted in work weeks of longer than forty (40) hours (and often well over forty when he was required to stay for numerous double shifts), Plaintiff was only ever compensated at his regular hourly rate. Defendants never payed Plaintiff, FLSA Collective Plaintiffs, and Class Members their appropriate overtime compensation of one and one half time. Additionally, on the days when Plaintiff would work double shifts, he was never paid the spread of hours premiums that are required under the NYLL. Collective Plaintiffs and Class Members were similarly uncompensated for their spread of hours premiums.

39.     Throughout Plaintiff's employment, Plaintiff was compensated in cash on a weekly basis without a pay stub. Plaintiff was compensated beginning at a rate of fourteen dollars ($14) an hour with a periodic raise each January until the final year he worked when he was paid at eighteen dollars ($18) an hour . FLSA Collective Plaintiffs and Class Members were similarly compensated weekly in cash, without pay stubs, at similar rates.

40.     As a result of Defendants' paying Plaintiff, and Class Members in cash, Defendants failed to provide Plaintiff, and Class Members with accurate IRS Forms W-2 for all the tax years of their employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, and Class Members. In failing to account for these monies in their IRS filings, Defendants filed fraudulent information in violation of 26 U.S.C. § 7434. Under 26 U.S.C. § 7434(b), Defendants are liable for at least five thousand dollars to Plaintiff, and Class Members for each fraudulent filing, which would have to be at least once a year.

41.     In violating the Internal Revenue Code by failing to provide proper W-2 forms, Defendants also breached their contract with Plaintiff, and Class Members to pay the employer's share of Social Security and Medicare taxes for each employee.

42.     Defendants also unjustly enriched themselves at the expense of Plaintiff, and Class Members by retaining monies that should have been remitted to the IRS on behalf of Plaintiff, and Class Members.

43.     As a result, Plaintiff, and Class Members will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

44.     The employer's share of Social Security taxes is 6.2%. The employer's share of Medicare taxes is 1.45%. Accordingly, Defendants must compensate Plaintiff, and Class Members 7.65% of all their earnings from Defendants beginning six years prior to the filing of this Complaint.

45.     Defendants are liable to Plaintiff, and Class Members for failing to pay FICA taxes for the wages earned by Plaintiff, and Class Members.

46.    Plaintiff and Class Members never received a wage notice from Defendants. They also did not receive accurate wage statements from Defendants.

47.    In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated its business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

48.    Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with accurate wage statements, because wage statements that do not reflect the actual number of hours worked by the employee do not satisfy the requirements of the WTPA. *See Shi Yong Li v. 6688 Corp*., 2013 U.S. Dist. LEXIS 148020, *6 (S.D.N.Y. Sept. 27, 2013) ("The wage statements provided failed to accurately indicate the amount of time *actually* worked by tipped employees") (emphasis added); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that "the 'number of overtime hours' that appears on the wage statement should include every hour *actually* 'worked' by the employee") (emphasis added); *Campos v. Bkuk 3 Corp*., 2021 U.S. Dist. LEXIS 151528, *30 (S.D.N.Y. Aug. 10, 2021) ("Thus, when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours *actually* worked") (emphasis added).

49.    In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010

S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

50.    Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide its wrong-doing, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

51.    Had the wage statements Defendants provided to Plaintiff and Class Members accurately listed the total number of hours Plaintiff and Class Members actually worked, as required by law, Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employee actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

52.     The failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

53.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices and wage statements as required by NYLL and the NJWPL.

54.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. See *Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-2 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

55.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paysubs. The paystub processing service *realcheckstubs* explains: "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July 8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

56.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, at *18, 2023 WL 2388728, at *8 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, at *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, at *4 (S.D.N.Y. July 14, 2022)).

57.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with accurate wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class

16

Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

58.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because "[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id*. at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id*. Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id*. "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id*.

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

59.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id*. Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "[p]laintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

60.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id*. ("Although only citizens and aliens residing in the United States may

receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

61.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

> The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.
>
> All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income.

*Id.*

62.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent her W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

63.    Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to

provide notices according to the NYLL and NJWPL continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members.

64.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff and Class Members the proper overtime wages at a rate that is at least one-and-one-half times the regular rate of pay for hours worked in excess of forty per workweek due to time shaving, in violation of the FLSA, NJWHL, and NYLL.

65.     Defendants knowingly and willfully operated their business with a policy of not providing wage and hour notice to Plaintiff and Class Members, in violation of the NYLL and NJWPL.

66.     Defendants knowingly and willfully operated their business with a policy of not providing proper wages statements to Plaintiff and Class Members as required under the NYLL and NJWPL, as the wage statements did not accurately reflect the number of hours worked by employees.

67.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF FAIR LABOR STANDARDS ACT

68.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as fully set forth herein.

69.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA,

29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

70.    At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiffs within the meaning of FLSA.

71.    At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

72.    At all relevant times, Defendants had a policy and practice of failing to pay Plaintiff and FLSA Collective Plaintiffs at the proper overtime rate to for their hours worked over forty hours a week due to time shaving.

73.    Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

74.    Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, when Defendants knew or should have known such was due.

75.    Defendants failed to properly disclose or apprise Plaintiff or FLSA Collective Plaintiffs of their rights under FLSA.

76.    As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to FLSA.

77.    Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages,

including unpaid overtime, due to a fixed salary basis; unpaid wages, including overtime, due to time shaving; plus, an equal amount as liquidated damages.

**COUNT II**

**VIOLATION OF NEW YORK LABOR LAW**

78.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

79.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

80.     Defendants violated Plaintiff's and Class Members' rights by failing to pay overtime wages for hours worked in excess of forty per workweek at the proper overtime rate that is at least one-and-one-half times the regular rate of pay due to a fixed salary and time shaving, in violation of the NYLL.

81.     Defendants failed to compensate Plaintiff and Class Members with their spread of hours premiums for their shifts worked in excess of 10 hours, in direct violation of the NYLL.

82.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with wage notice, at date of hiring and annually thereafter, as required under the NYLL.

83.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members with proper wage statements as required under the NYLL.

84.     Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to time shaving; reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

## COUNT III

### VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW

### (brought only on behalf of Class Members employed in the State of New Jersey)

85.     Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

86.     At all relevant times, Class Members in New Jersey were employed by the Defendants within the meaning of the New Jersey Statutes Annotated 34:11-56a1(h).

87.     At all relevant times, Defendants were employers within the meaning of New Jersey Statutes Annotated 34:11-56a1(g).

88.     At all relevant times, Defendants engaged in a policy and practice of not compensating Class Members in New Jersey all wages, including overtime, in direct violation of the NJWHL.

89.     At all relevant times, Defendants engaged in a policy and practice of not compensating Class Members in New Jersey all wages, including overtime, due to time shaving, in direct violation of the NJWHL.

90.     Due to Defendants' NJWHL violations, New Jersey Class Members and Tipped Subclass Members are entitled to recover from Defendants their unpaid wages, including overtime; unpaid wages, including overtime, due to time shaving; reasonable attorney's fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to the NJWHL.

## COUNT IV

## VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW

## (brought only on behalf of Class Members employed in the State of New Jersey)

91.    Plaintiff realleges and reavers all the above allegations of this Complaint as fully set forth herein.

92.    At all relevant times, Class Members in New Jersey were employed by the Defendants within the meaning of the New Jersey Statutes Annotated 34:11-4.1.

93.    At all relevant times, Defendants were employers within the meaning of New Jersey Statutes Annotated 34:11-4.1.

94.    At all relevant times, Defendants engaged in a policy and practice of not compensating Class Members in New Jersey all wages, including overtime, in direct violation of the NJWPL.

95.    At all relevant times, Defendants engaged in a policy and practice of not compensating Class Members in New Jersey all wages, including overtime due to time shaving, in direct violation of the NJWPL.

96.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under the NJWPL, N.J. Stat. § 34:11-4.6.

97.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices at the time of hiring, after change in rate of pay, and/or after change in regular payday designated by Defendants, as required under the NJWPL, N.J. Stat. § 34:11-4.2.

98.    Due to Defendants' NJWPL violations, New Jersey Class Members are entitled to recover from Defendants their unpaid wages, including overtime, unpaid wages, including

overtime, due to time shaving, reasonable attorney's fees, liquidated damages, statutory penalties, and costs and disbursements of the action, pursuant to the NJWPL.

## COUNT V

## CIVIL DAMAGES FOR FRAUDULENT FILING OF INFORMATION RETURNS

## UNDER 26 U.S.C. § 7434(a)

99.     Plaintiff realleges and incorrorates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein.

100.     Under the Internal Revenue Code, "[i]f any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such person may bring a civil action for damages against the person so filing such return." 26 U.S.C. § 7434(a).

101.     By failing to provide Plaintiff and Class Members with accurate IRS Forms W-2 for all of the tax years during which they were employed by Defendants and failing to properly record, account for, and report to the IRS all monies paid to Plaintiff and the Class as wages, Defendants filed fraudulent information returns with the IRS, in violation of 26 U.S.C. § 7434.

102.     Defendants knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees. Defendants' actions were willful violations of, or showed reckless disregard for, the provisions of the Internal Revenue Code.

103.     Pursuant to 26 U.S.C. § 7434(b)(3), Defendants are also liable to Plaintiff for reasonable attorneys' fees.

## COUNT VI

## BREACH OF CONTRACT

104.     Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

105.    "In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance … This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract … [T]he duties of good faith and fair dealing … encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *511 W. 232nd Owners Corp. v. Jennifer Realty Co*., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 500-501, 746 N.Y.S.2d 131, 135-136, 2002 N.Y. LEXIS 1579, *10-11 (2002).

106.    When Plaintiff and Class Members accepted offers of employment form Defendants, the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff and Class Members in accordance with all applicable laws. This involved, *inter alia*, a duty by abide by the Internal Revenue Code and pay all required FICA taxes.

107.    Defendants breached this duty when they decided to pay Plaintiff and Class Members in cash and not file proper W-2. As a result, Plaintiff and Class Members lost part of the benefit of the bargain for which they contracted, suffering a loss in the amount of the FICA taxes that Defendants should have paid on their behalf but did not.

## COUNT VII

## __UNJUST ENRICHMENT__

108.    Plaintiff realleges and incorporates all the foregoing paragraphs of this Class and Collective Action Complaint as if fully set forth herein and further alleges as follows:

109.    To state a claim for unjust enrichment, a plaintiff must allege that: "(1) the [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that it is against equity and good

conscience to permit the [defendant] to retain what is sought to be recovered." *Georgia Malone & Co., Inc. v Rieder*, 19 NY3d 511, 516, 973 NE2d 743, 950 NYS2d 333 (2012) (internal quotations omitted).

110.    Defendants were unjustly enriched when they kept for themselves money that should have been paid to the Internal Revenue Service as Defendants' employer FICA contribution. Such came at the expense of Plaintiff and Class Members because they will either (1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because they did not pay enough into the system.

111.    Accordingly, all sums that Defendants should have paid to the IRS should be disgorged from Defendants and transferred to Plaintiff and Class Members.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff on behalf of himself, FLSA Collective Plaintiffs and Class Members respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA, the NYLL, the NJWHL and the NJWPL;

b.    A declaratory judgment that the practices complained of herein are unlawful under 26 U.S.C. § 7434 and that Defendants breached their contract with, and/or unjustly enriched themselves at the expense of, Plaintiff and Class Members;

c.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

d.  An award of unpaid wages, including overtime, due to Defendants time shaving policy due under the FLSA, the NYLL, the NJWHL, and the NJWPL;

e.  An award of unpaid wages, including overtime compensation at the proper rate of one-and-one-half times the regular rate of pay for hours worked in excess of forty per workweek, due under the FLSA, the NYLL, the NJWHL, and the NJWPL;

f.  An award of statutory penalties as a result of Defendants' failure to comply with NYLL and NJWPL wage notice and wage statement requirements;

g.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty per workweek, pursuant to the FLSA;

h.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay compensation for all hours worked and overtime compensation for all hours worked over forty per workweek, pursuant to the NYLL, NJWHL and NJWPL;

i.  An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages, including overtime wages, pursuant to the NJWHL, and NJWPL;

j.  An award of five thousand dollars in statutory damages to Plaintiff and each Class Member under 26 U.S.C. § 7434;

k.  Contractual damages for Defendants' failure to keep their promise to abide by the Internal Revenue Code and fund Plaintiff's and Class Members' retirement through FICA contributions;

l.  An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees;

m.  Designation of Plaintiff as Representative of FLSA Collective Plaintiffs;

n.  Designation of this action as a class action pursuant to F.R.C.P. 23;

o.  Designation of Plaintiff as Representative of the Class; and

p.  Such other and further relief as this Court deems just and proper.

### JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Date: May14, 2025

New York, New York

Respectfully submitted,

By:  _/s/ CK Lee_

C.K. Lee, Esq.
**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiff, FLSA*
*Collective Plaintiffs,and the Class*

28