USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 07/30/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AGUSTIN GARCIA,

Plaintiff,

-v-

SKYLINE GROUP GLOBAL CORPORATION d/b/a SKYLINE CONSTRUCTION, et al.,

Defendants.

25-cv-4060 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Agustin Garcia ("Plaintiff") brought this action against Defendants Skyline Group Global Corporation, Skyline Carting Inc., Dismantling Consulting, LLC, George Fotiadis (hereinafter "George Fotiadis, Sr."), George Fotiadis, Jr., and Kevin Fotiadis alleging violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, New York Labor Law ("NYLL"), N.Y. Lab. Law §§ 190 *et seq*. and 650 *et seq.*, the Internal Revenue Code ("IRC"), 26 U.S.C. § 7434, and Federal Insurance Contribution Act ("FICA"), 26 U.S.C. §§ 3101 *et. seq.*, as well as for breach of contract and unjust enrichment.[1] Plaintiff now moves for default judgment against Skyline Group Global Corporation, Skyline Carting Inc., and Dismantling Consulting, LLC ("Corporate Defendants"), as well as George Fotiadis, Jr. and Kevin Fotiadis ("Individual Defendants"; and, taken together with Corporate Defendants, "Defendants") pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion for default judgment is granted in part and denied in part.

[1] While Plaintiff brought the action as a FLSA collective action pursuant to 29 U.S.C. § 216(b), no collective was conditionally certified and Plaintiff requests damages only for himself in his motion for default judgment. Dkt. No. 38 ¶ 26; Dkt. No. 61.

**BACKGROUND**

The following facts are drawn from Plaintiff's amended complaint and are accepted as true for purposes of this motion. Dkt. No. 38 ("First Amended Complaint" or "FAC").

Corporate Defendants are construction companies that operate in New York and New Jersey. FAC ¶ 12. Individual Defendants own and operate the Corporate Defendants as a single integrated enterprise. *Id.* ¶¶ 10, 12.

Plaintiff worked for Defendants as a laborer from June 2015 through August 2022. *Id.* ¶¶ 39–40. Plaintiff's duties included cutting and installing drywall, framing rooms, installing fixtures, loading and unloading trucks, and assisting on projects as needed. *Id.* ¶ 40.

While employed by Defendants, Plaintiff was scheduled to work seven days a week, eight hours a day, either from 7:00 a.m. to 3:00 p.m. or from 8:00 a.m. to 4:00 p.m. *Id.* ¶ 41; Dkt. No. 71 ("Garcia Aff.") ¶ 3. After the first shift, and as frequently as five days a week, Plaintiff was required to work a second full shift from 5:00 p.m. until 12:00 a.m. FAC ¶ 41. Additionally, Plaintiff was required to show up to work ten minutes early each day and stay anywhere from fifteen to thirty minutes after the end of his shift, resulting in approximately four hours and forty minutes of extra time each week. *Id.* ¶ 42; Garcia Aff. ¶ 5. Plaintiff's scheduled time always resulted in work weeks of longer than forty hours, and often well over that when he was required to stay for the second shift. FAC ¶ 43; Garcia Aff. ¶ 6.

Defendants did not utilize a timeclock machine, so Plaintiff never clocked in or out on one. FAC ¶ 42. Instead, Defendants required Plaintiff to sign an attendance sheet at the start of each shift, without any sort of time stamp. *Id.*

Plaintiff was then paid in cash on a weekly basis, without a pay stub, beginning at a rate of $14.00 per hour with a periodic raise each January until the final year he worked, when he was paid $18.00 per hour. *Id.* ¶ 44; Garcia Aff. ¶ 8. Plaintiff was paid for eight hours of work for

each shift that he signed the attendance sheet for, regardless of how long he actually worked. FAC ¶ 42; Garcia Aff. ¶ 5. Plaintiff alleges Defendants never paid Plaintiff the required overtime pay of time and one half for hours in excess of 40 per week, and on the days Plaintiff would work the second shift, he was never paid the spread of hours premiums required under the NYLL. FAC ¶ 43; Garcia Aff. ¶¶ 6–7.

As a result of the cash payments, Defendants failed to provide Plaintiff with accurate Internal Revenue Service ("IRS") Form W-2s for all the tax years of his employment. FAC ¶ 45. Plaintiff alleges that Defendants also failed to properly record, account for, and report to the IRS all monies paid to Plaintiff, resulting in the filing of fraudulent information in violation of the IRC. *Id*.

Plaintiff further alleges that Defendants breached their contract with Plaintiff to pay the employer's share of Social Security and Medicare taxes for each employee, *id.* ¶ 46, and that Defendants unjustly enriched themselves at the expense of Plaintiff by retaining monies that should have been remitted to the IRS on behalf of Plaintiff, *id.* ¶ 47. As a result, Plaintiff alleges he will either (1) be liable to the IRS for the employer's share of FICA taxes or (2) upon retirement, suffer from diminished Social Security and Medicare benefits because he did not pay enough into the system. *Id.* ¶ 48.

Plaintiff also never received wage notices or accurate wage statements from Defendants. *Id.* ¶ 51. Plaintiff alleges Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff, and that the wage statements did not reflect the actual number of hours worked by the employee, in violation of the WTPA. *Id.* ¶¶ 52–53.

**PROCEDURAL HISTORY**

Plaintiff filed a complaint against Skyline Group Global Corporation, Skyline Carting Inc., Dismantling Consulting, LLC, and George Fotiadis, Sr. on May 14, 2025. Dkt. No. 1.

Plaintiff then moved for a default judgment against all Defendants on August 6, 2025. Dkt. No. 20. The motion and supporting papers were served on Defendants by mail on August 7, 2025. Dkt. No. 24. On August 28, 2025, George Fotiadis, Sr. filed a memorandum of law and declaration in opposition to the motion for default judgment and in support of a cross-motion to vacate the certificate of default on the grounds that he had no connection to Defendants and was incorrectly named in the complaint due to mistaken identity. Dkt. Nos. 30–33. On September 5, 2025, Plaintiff withdrew the motion for default judgment as against George Fotiadis, Sr. and was permitted leave to file an amended complaint. Dkt. Nos. 35–37.

Plaintiff filed an amended complaint against Defendants Skyline Group Global Corporation, Skyline Carting Inc., Dismantling Consulting, LLC, George Fotiadis, Sr., George Fotiadis, Jr., and Kevin Fotiadis on October 6, 2025. Dkt. No. 38. George Fotiadis, Sr. filed an answer on October 27, 2025. Dkt. No. 51. Plaintiff then moved for a default judgment against Skyline Group Global Corporation, Skyline Carting Inc., Dismantling Consulting, LLC, George Fotiadis, Jr., and Kevin Fotiadis on April 28, 2026.[2] Dkt. No. 61. The motion was served on Defendants by priority mail on April 28, 2026. Dkt. No. 64. Defendants did not respond. On April 29, 2026, the Court ordered the parties to appear for a telephonic status conference on the motion for default judgment on May 7, 2026. Dkt. No. 65. No Defendant appeared at the conference. The Court also directed Plaintiff to move to supplement his motion as to the issue of damages. *Id.* On May 21, 2026, Plaintiff filed a supplemental memorandum of law in support of his motion for default judgment together with two supporting affirmations. Dkt. Nos. 69–71.

---

[2] Plaintiff's claims were voluntarily dismissed with prejudice as against Defendant George Fotiadis, Sr. on May 8, 2026. Dkt. No. 68.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 55 sets forth a two-step procedure to be followed for the entry of judgment against a party who fails to defend: the entry of a default, and the entry of a default judgment. *See New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005).

The first step, entry of a default, simply "formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011); *see* Fed. R. Civ. P. 55(a). The second step, entry of a default judgment, "converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled, to the extent permitted" by the pleadings. *Mickalis Pawn Shop*, 645 F.3d at 128; *see also* Fed. R. Civ. P. 55(b). Whether entry of default judgment at the second step is appropriate depends upon whether the well-pleaded allegations against the defaulting party establish liability as a matter of law. *See Mickalis Pawn Shop*, 645 F.3d at 137.

While a defendant who defaults admits the well-pleaded factual allegations in a complaint, because a party in default does not admit conclusions of law, "a district court need not agree that the alleged facts constitute a valid cause of action." *Id.* (internal quotation marks and citation omitted); *see Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 367 (S.D.N.Y. 2020) ("The essence of Fed. R. Civ. P. 55 is that a plaintiff can obtain from a default judgment relief equivalent to but not greater than that it would obtain in a contested proceeding assuming it prevailed on all of its factual allegations."). Therefore, this Court is "required to determine whether the [plaintiff's] allegations establish [the defendant's] liability as a matter of law." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

"The legal sufficiency of these claims is analyzed under the familiar plausibility standard enunciated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009), aided by the additional step of drawing inferences in the movant's favor." *WowWee Grp. Ltd. v. Meirly*, 2019 WL 1375470, at *5 (S.D.N.Y. Mar. 27, 2019). A default judgment entered on well-pleaded allegations does not reach the issue of damages, and plaintiffs "must therefore substantiate [their] claim for damages with evidence to prove the extent of those damages." *Hood v. Ascent Med. Corp.*, 2016 WL 1366920, at *15 (S.D.N.Y. Mar. 3, 2016), *report and recommendation adopted*, 2016 WL 3453656 (S.D.N.Y. June 20, 2016), *aff'd*, 691 F. App'x 8 (2d Cir. 2017) (summary order).

To determine the amount of damages that should be awarded on a default judgment, Federal Rule of Civil Procedure 55(b)(2) "leaves the decision of whether a hearing is necessary to the discretion of the district court." *Lenard v. Design Studio*, 889 F. Supp. 2d 518, 527 (S.D.N.Y. 2012). And "[w]here, on a damages inquest, the plaintiff makes a damages submission and the defaulting defendant makes no submission in opposition and does not request a hearing, the court may determine the adequacy of the plaintiff's damages claim based on its submitted proofs." *Id.*

**DISCUSSION**

Plaintiff alleges ten claims under the FLSA, NYLL, IRC, and FICA: (1) unpaid overtime wages due to time-shaving in violation of the FLSA, 29 U.S.C. § 206(a), FAC ¶ 77; (2) unpaid overtime premiums due to straight-time rate compensation in violation of the FLSA, 29 U.S.C. § 207(a)(1), FAC ¶ 77; (3) unpaid overtime wages due to time-shaving in violation of NYLL § 652, FAC ¶ 85; (4) unpaid overtime premiums due to straight-time rate compensation in violation of NYLL, 12 N.Y.C.R.R. § 142-2.2, FAC ¶ 85; (5) unpaid spread of hours premiums in violation of the NYLL, N.Y.C.R.R. §§ 142-2.4, FAC ¶ 86; (6) failure to provide wage notices in violation of NYLL § 195(1), FAC ¶ 87; (7) failure to provide proper wage statements in violation of NYLL § 195(3), FAC ¶ 88; (8) fraudulent filing of information returns in violation

of the IRC, 26 U.S.C. § 7434(a), FAC ¶ 106; (9) breach of contract, FAC ¶¶ 109–12; and (10) unjust enrichment, FAC ¶¶ 113–16.

## I. Liability

### A. Applicability of the FLSA

#### 1. Statute of Limitations

"As a threshold matter, the Court considers whether Plaintiff's claims are timely under the applicable statutes of limitations." *Jimenez v. Green Olive Inc.*, 744 F. Supp. 3d 221, 245 (E.D.N.Y. 2024); *see also Borja v. MSK Rest. Corp.*, 2025 WL 951402, at *9, *12 (E.D.N.Y. Mar. 13, 2025) (examining statute of limitations in the context of a FLSA and NYLL default judgment), *report and recommendation adopted*, 2025 WL 948122 (E.D.N.Y. Mar. 29, 2025).

"The limitations period for FLSA claims is two years, 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.'" *Coreas v. Angeles Beauty Salon Inc.*, 2026 WL 1471388, at *7 (E.D.N.Y. Apr. 22, 2026) (quoting *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 319 (2d Cir. 2021)), *report and recommendation adopted*, Text Order, dated May 20, 2026; *see also* 29 U.S.C. § 255(a).

Plaintiff was terminated in August 2022, more than two years before this action was commenced on May 14, 2025. *See* Dkt. No. 1; FAC ¶ 39. Accordingly, it appears that his FLSA claims would be time-barred absent a well-pled allegation that Defendants' FLSA violations were willful. "[T]he mere allegation of willfulness is insufficient to allow an FLSA plaintiff to obtain the benefit of the three-year exception at the pleadings stage." *Whiteside*, 995 F.3d at 323. A plaintiff must plead facts that "permit a plausible inference that Defendants *willfully* violated the statute—whether by actual knowledge or . . . by reckless disregard." *Id.* at 324.

The Court need not decide whether Plaintiff's allegations satisfy that standard, however, because Plaintiff sufficiently alleges federal claims and the Court thus may exercise

supplemental jurisdiction over the NYLL claims, which are so related to the FLSA claims that they form part of the same case or controversy. *See* 28 U.S.C. § 1367(a); *see also McDermott v. Federal Sav. Bank*, 2023 WL 12194819, at *7–8 (E.D.N.Y. Aug. 17, 2023) (exercising supplemental jurisdiction over the NYLL claims of a plaintiff whose FLSA claims were time-barred); *Juarez v. Duke Ellington Gourmet Corp.*, 2022 WL 5238332, at *7 (S.D.N.Y. Oct. 6, 2022) (same); *Huer Huang v. Shanghai City Corp.*, 459 F. Supp. 3d 580, 594 (S.D.N.Y. 2020) (same). Moreover, each of Plaintiff's FLSA claims is joined with a corresponding NYLL claim seeking the same or substantially similar relief. The NYLL "provides for a six-year statute of limitations for wage-and-hour claims." *Coreas*, 2026 WL 1471388, at *7 (citing NYLL §§ 198(3), 663(3)). Accordingly, resolution of the NYLL claims affords a complete basis for the relief sought under FLSA without requiring the Court to decide whether Plaintiff has adequately alleged a willful FLSA violation. However, Plaintiff "may not receive a 'double recovery' of back wages under both the FLSA and NYLL." *Chen v. L & H Wine & Liquor, Inc.*, 2024 WL 1932855, at *8 (S.D.N.Y. May 2, 2024) (quoting *Hernandez v. Jrpac Inc.*, 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016)).

**2. Plaintiff's Status as an Employee**

As a laborer, Plaintiff qualifies as an employee under both FLSA § 203(e) ("'[E]mployee' means any individual employed by an employer.") and NYLL § 651(5) ("'Employee' includes any individual employed or permitted to work by an employer in any occupation."). *See Hosseini v. Miilkiina LLC*, 2023 WL 7128092, at *3 (S.D.N.Y. Oct. 27, 2023) (finding that plaintiff qualified as employee for purposes of FLSA and NYLL); *Jimenez*, 744 F. Supp. 3d at 246–47 (same).

The FLSA applies to employees who are either (1) "engaged in commerce or in the production of goods for commerce," or (2) "employed in an enterprise engaged in commerce or

in the production of goods for commerce." 29 U.S.C. §§ 206(a), 207(a)(1). The FLSA defines an "enterprise," *inter alia*, as "the related activities performed . . . by any person or persons for a common business purpose." 29 U.S.C. § 203(r)(1); *see Cantey v. Ctr. for Emp. Opportunities, Inc.*, 2026 WL 923844, at *6–8 (S.D.N.Y. Apr. 6, 2026). To qualify as an "enterprise engaged in commerce or in the production of goods for commerce," the employer must have (1) "employees engaged in commerce or in the production of goods for commerce" or "employees handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person;" and (2) an annual gross sales volume of at least $500,000. 29 U.S.C. § 203(s)(1)(A)(i–ii); *see Marcelino v. 374 Food, Inc.*, 2018 WL 1517205, at *10 (S.D.N.Y. Mar. 27, 2018).

"[L]ocal business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce." *Cabrera v. Canela*, 412 F. Supp. 3d 167, 173 (E.D.N.Y. 2019) (quoting *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)). "To establish that workers handle goods or materials that have moved in interstate commerce, a plaintiff may specifically identify the goods that employees used in the course of their work." *Cantey*, 2026 WL 923844, at *7; *see e.g.*, *Georges v. Detroit Pizza NYC LLC*, 2024 WL 1195727, at *4 (S.D.N.Y. Mar. 20, 2024) (plaintiffs sufficiently alleged engagement in interstate commerce where they alleged that employees worked with ingredients for restaurant dishes, soda, paper towels, and cleaning products). A court may also find that employees engaged in interstate commerce by inference through "the nature of the employer's business." *Cantey*, 2026 WL 923844, at *7 (internal quotation marks and citation omitted); *see, e.g.*, *Gaitian v. D'Amico Indus. LLC*, 2024 WL 4265839, at *7 (E.D.N.Y. Sept. 23, 2024) ("[T]here can be little doubt that the equipment and

goods, which included blocks, cement, bricks, and other materials, that Defendants' employees used in their construction jobs originated outside of New York."); *D'Arpa v. Runway Towing Corp.*, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013) ("[I]t is inconceivable that none of the trucks or other materials used by Plaintiffs in their line of work originated outside of New York.").

Plaintiff alleges he qualifies as a covered employee because Defendants "were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce." FAC ¶ 74. Plaintiff's duties included cutting and installing drywall, framing rooms, installing fixtures, loading and unloading trucks, and assisting on projects as needed. *Id.* ¶ 40. These allegations are sufficient to allege that Defendants' employees handled goods in interstate commerce. Plaintiff further asserts that Corporate Defendants had gross annual revenues exceeding $500,000 at all relevant times. *Id.* ¶ 76. Accordingly, Plaintiff has established that the FLSA applies to his employment.

**3. Defendants' Status as Employers**

Plaintiff has additionally alleged that Defendants are employers under the FLSA and NYLL. *See Sethi v. Narod*, 974 F. Supp. 2d 162, 188 (E.D.N.Y. 2013) ("District courts in this Circuit 'have interpreted the definition of "employer" under the New York Labor Law coextensively with the definition used by the FLSA.'") (quoting *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010)). The Second Circuit applies an "economic reality" test to determine whether an employer-employee relationship exists. *Irizarry v. Catsimatidis*, 722 F.3d 99, 104–05 (2d Cir. 2013). "When it comes to 'employer' status under the FLSA, control is key." *Olvera v. Bareburger Grp. LLC*, 73 F. Supp. 3d 201, 205 (S.D.N.Y. 2014) (quoting *Lopez v. Acme Am. Env't Co., Inc.*, 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012)). In assessing control, the Second Circuit considers whether the defendant (1) had the power to hire and fire the

plaintiff, (2) supervised and controlled the plaintiff's work schedules or conditions of employment, (3) determined the plaintiff's rate and method of payment, and (4) maintained employment records. *Irizarry*, 722 F.3d at 104–05. The court must consider the totality of the circumstances, and no single factor is dispositive. *Id.* at 106. For individual liability, mere ownership or officer status is not sufficient on its own to demonstrate individual employer liability; rather, the individual must possess control over the company's actual operations "in a manner that relates to a plaintiff's employment," such as over "workplace conditions and operations, personnel, or compensation." *Id.* at 109–10.

Plaintiff alleges facts supporting all four factors with regard to Defendants. Plaintiff alleges that the Individual Defendants have the power to fire and hire employees, supervise and control employee work schedules and conditions of employment, determine the rate and method of compensation of employees including those of Plaintiff, and maintained employment records. FAC ¶¶ 20–21, 30. Kevin Fotiadis was personally present at the various job sites where Plaintiff performed work and would instruct the foremen on details and expectations of each job. *Id.* ¶ 18. The Individual Defendants exercised operational control as it relates to all employees and exercised functional control over the business and financial operations of the Corporate Defendants. *Id.* ¶¶ 20–21. At all times, Plaintiff alleges that employees could complain to the Individual Defendants directly regarding any of the terms of their employment, and the Individual Defendants had the authority to effect any changes to the quality and terms of employment. *Id.*; *see Cortez v. Brand Name 99 Cents & Up Corp.*, 2025 WL 1251297, at *4 (S.D.N.Y. Apr. 30, 2025) (plaintiff adequately alleged that defendant was an employer where defendant "maintained significant control over" working conditions and compensation); *see also Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 265 (defendant qualified as an employer

where he assigned work, actually paid the employees, and had the authority to terminate employees). Taken together, Defendants were each Plaintiff's employer under both the FLSA and NYLL. *See Basurto v. Giants Deli Inc.*, 2026 WL 789516, at *6 (S.D.N.Y. Jan. 6, 2026) (individual defendant and corporate defendant each qualified as employers under the FLSA and NYLL where individual defendant controlled corporate defendant's functions, determined wages and compensation, and had the authority to hire and fire employees).

As the Individual and Corporate Defendants each qualify as employers under the FLSA and NYLL, they are considered joint employers and are jointly and severally liable for any damages award. *Id.* (finding that individual and corporate defendants were joint employers and therefore jointly and severally liable for any damages award); *see also Gomez Cruz v. Ding Feng Lin Constr. LLC*, 2025 WL 2933201, at *11 (E.D.N.Y. Aug. 25, 2025) ("Joint employers are jointly and severally liable for either employer's violations of the FLSA."); *L & H Wine & Liquor*, 2024 WL 1932855, at *8–9 (holding individual defendant jointly and severally liable where individual defendant was employer for purposes of NYLL).

**B. Unpaid Wages (Pre- and Post-Shift Work)**

The FLSA and NYLL each require employers to pay employees for all time worked. *See* 29 U.S.C. § 207; 29 C.F.R. § 778.223(a) (stating that "hours worked" under § 207 "include: (1) [a]ll time during which an employee is required to be on duty or to be on the employer's premises or at a prescribed workplace; and (2) [a]ll time during which an employee is suffered or permitted to work whether or not he is required to do so"); NYLL §§ 190(a), 191. The FLSA and NYLL each require an employer to pay an employee at least a minimum hourly rate for each hour the employee works. 29 U.S.C. § 206; NYLL § 652. Additionally, both the FLSA and NYLL require employers to pay employees one-and-one-half times their regular rate of pay for hours worked over forty per week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2.

Plaintiff pleads sufficient factual information to establish that Defendants violated the FLSA and NYLL overtime requirements. Plaintiff alleges that throughout his entire employment, Defendants always required him to work in excess of his scheduled eight-hour shift while only paying him for eight hours. FAC ¶ 42; Garcia Aff. ¶ 5. Plaintiff was "required" to show up to work ten minutes early each day and to stay anywhere from fifteen to thirty minutes after the end of his shift, resulting in approximately four hours and forty minutes of time-shaved overtime each week for which Plaintiff was not compensated. FAC ¶ 42. Therefore, Plaintiff sufficiently pleads that Defendants violated the FLSA and NYLL wage provisions. *See Cuanetl v. Café H Inc.*, 2022 WL 4124766, at *8 (E.D.N.Y. Aug. 9, 2022) (plaintiff adequately alleged unpaid overtime wages where he alleged he was "'required' to come into work approximately 30 minutes early and stay approximately 15 to 30 minutes past his scheduled shift").

**C. Unpaid Overtime Premiums**

Both the FLSA and NYLL require employers to pay employees one-and-one-half times their regular rate of pay for hours worked over forty per week. 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142-2.2; *see Hosseini*, 2023 WL 7128092, at *4. To state a claim for failure to pay overtime wages, a plaintiff must allege that he worked over forty hours of work in a given workweek. *Hosseini*, 2023 WL 7128092, at *4 (citing *Herrera v. Comme des Garcons, Ltd.*, 84 F.4th 110, 115 (2d Cir. 2023)).

Plaintiff pleads sufficient factual information to establish that Defendants violated the FLSA and NYLL overtime requirements. Plaintiff alleges that from approximately June 2015 to August 2022, Plaintiff worked either from 7:00 a.m. to 3:00 p.m. or from 8:00 a.m. to 4:00 p.m. FAC ¶¶ 39, 41; Garcia Aff. ¶ 3. After the first shift, Plaintiff was often required to work a second full shift from 5:00 p.m. until 12:00 a.m., sometimes up to five days a week. FAC ¶ 41.

This amounts to approximately 64 to 96 hours per week. Dkt. No. 62 at 6.[3] He further alleges that he was paid his regular rate beginning at $14.00 per hour for all hours worked, with a periodic raise each January until the final year he worked when he was paid $18.00 per hour. FAC ¶ 44; Garcia Aff. ¶ 8. Therefore, Defendants "straightforwardly violated the FLSA and New York overtime requirements." *Castillo v. Isakov*, 2023 WL 6664552, at *4 (S.D.N.Y. Oct. 12, 2023); *see Hosseini*, 2023 WL 7128092, at *4 (plaintiff adequately alleged violation where he alleged that he worked at least 50 hours each week in the month of February 2021); *Maldonado Juarez v. Butterfield Catering Inc.*, 2020 WL 6945944, at *2 (S.D.N.Y. Nov. 25, 2020) (plaintiff adequately alleged violation where he detailed his hours of 4:00 a.m. to 2:00 p.m. five days a week).

**D. Unpaid Spread of Hours Premiums**

The NYLL requires an employer to pay an employee one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required, for any day in which the spread of hours exceeds 10 hours. N.Y.C.R.R. § 142-2.4.

Plaintiff alleges that Defendants often required Plaintiff to work a second full shift from 5:00 p.m. until 12:00 a.m., sometimes up to five days a week, resulting in a spread of over ten hours and up to approximately nineteen hours each day. FAC ¶ 41; Garcia Aff. ¶¶ 3, 7.[4] Therefore, Plaintiff sufficiently pleads that Defendants violated the NYLL's spread of hours premiums provision.

[3] 64 hours is calculated as the base of 56 hours (eight hours a day, seven days a week) plus one second full shift of eight hours. 96 hours is calculated in the same manner, plus five second full shifts of eight hours (40 hours).

[4] It is unclear how Plaintiff calculates nineteen hours, but this does not affect the Court's analysis as it is clearly over the required ten hours.

**E. Wage Statement and Wage Notice Violations**

Plaintiff also seeks a default judgment against Defendants on his wage notice and wage statement claims under New York law. Before the Court may proceed to the merits of Plaintiff's claim, the Court must determine that Plaintiff has standing, including that he has demonstrated a "concrete and particularized" injury in fact. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021).

The Second Circuit has addressed the pleadings a plaintiff must make to establish Article III standing for NYLL wage notice and wage statement claims. *See Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300 (2d Cir. 2024). A plaintiff does not have Article III standing purely by pointing to "'technical violations' of the [New York] Labor Law." *Id*. at 305. The fact that the Wage Theft Prevention Act "grants a person a statutory right and purports to authorize that person to sue to vindicate that right" alone does not give an employee the right to pursue that claim in federal court. *Id*. Rather, the plaintiff must "show some causal connection between the lack of accurate notices and [a] downstream harm," such as an impaired ability to seek relief for wage violations about which they may not have information or a lack of proper documentation to apply for public benefits. *Id*. at 308–10. The plaintiff must plausibly allege "*how* he was injured by [the] defendants' failure to provide the required documents" and may not rely on "speculation and conjecture." *Id*. at 309 (citation omitted); *see also id*. at 308 ("[U]nless the plaintiff-employee can show that he or she would have undertaken such advocacy and plausibly would have avoided some actual harm or obtained some actual benefit if accurate notices had been provided, the plaintiff-employee has not established a concrete injury-in-fact sufficient to confer standing to seek statutory damages under § 195."). Nevertheless, "[a] plaintiff need not . . . establish an injury that is greater than or different from the loss of wages or overtime pay alleged

in their lawsuit." *Lock v. Costco Wholesale Corp.*, 2024 WL 4728594, at *4 (E.D.N.Y. Nov. 8, 2024) (citing *Guthrie*, 113 F.4th at 309).

Following *Guthrie*, courts in this Circuit "are in agreement that a plaintiff has standing if he [or she] plausibly alleges that, by failing to provide the required wage statements, the employer was 'able to hide [its] violations of wage and hour laws' and thus prevent the employee from 'determining and seeking payment for the precise amount of [his] unpaid wages.'" *Roma v. David Carmili, Physician, P.C.*, 761 F. Supp. 3d 481, 490 (E.D.N.Y. 2024) (quoting *Freeland v. Findlay's Tall Timbers Distrib. Ctr., LLC*, 2024 WL 4652251, at *2 (W.D.N.Y. Nov. 1, 2024), *appeal dismissed*, 2024 WL 5445327 (2d Cir. Dec. 27, 2024)); *accord Velasquez v. Heavenly Finest Deli Inc.*, 2026 WL 1906361, at *6 (S.D.N.Y. July 1, 2026).

Plaintiff alleges that Defendants' failure to provide wage notices and accurate wage statements "deprived employees of the ability to contest the pay provided by Defendants," "allowed Defendants to hide its wrong-doing," and "ensured Defendants' ability to further delay providing proper compensation." FAC ¶ 55. Plaintiff further alleges that had Defendants provided these notices and statements, "Defendants would have had to either (a) increase the wages to correspond to the hours actually worked or (b) forthrightly acknowledge . . . that the employee's wages did *not* correspond to the hours the employee actually worked." *Id.* ¶ 56. "Either possibility would have allowed Plaintiff … to vindicate [his] rights under the NYLL." *Id.* Plaintiff also alleges that "[t]he failure to provide proper wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff," which "caused Plaintiff … to struggle to pay bills and other debts." *Id.* ¶ 57. These allegations suffice to plausibly allege a causal connection between the alleged violations of the NYLL and the injuries that Plaintiff has suffered. *See Ortiz v. Consol. Edison Co. of New York, Inc.*, 801 F. Supp. 3d

260, 328 (S.D.N.Y. 2025) (allegations that defendants' failure to provide wage notice and statements prevented plaintiffs from realizing their true hours worked, that they were underpaid, and from taking appropriate action to obtain the payments due to them, sufficed as "ple[ading] a causal connection"); *Romero v. Garner Env't Servs., Inc.*, 2025 WL 3638397, at *7 (S.D.N.Y. Dec. 15, 2025); *see also Lipstein v. 20X Hosp. LLC*, 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023) (same). Therefore, Plaintiff has adequately established standing for his wage notice and wage statement claims under the NYLL.

Plaintiff has further adequately alleged that Defendants violated NYLL's wage notice and wage statement provisions. Under the NYLL, employers must furnish wage notices to their employees which disclose their rate of pay, NYLL § 195(1)(a), and must furnish wage statements that describe, *inter alia*, the dates of work covered, the applicable rates of pay, and relevant deductions and allowances, *id.* § 195(3). *See Cortez*, 2025 WL 1251297, at *6 (describing these statutory requirements). Plaintiff alleges that Defendants failed to provide wage notices listing rates of pay, including overtime hours and overtime rates, FAC ¶¶ 51, 55, and failed to provide Plaintiff with accurate wage statements that reflect the actual number of hours worked by the employee, *id.* ¶ 53. Consequently, Defendants violated the NYLL's wage notice and wage statement provisions. *See Cortez*, 2025 WL 1251297, at *6; *Hosseini*, 2023 WL 7128092, at *4.

**F. Fraudulent Filing of Information Returns**

The IRC prohibits the willful filing of a fraudulent information return with respect to payments purported to be made to any other person. 26 U.S.C. § 7434(a); *see also Katzman v. Essex Waterfront Owners LLC*, 660 F.3d 565, 567–69 (2d Cir. 2011). The term "information return" includes forms containing, among other things, the total amount of wages paid to an employee. *See* 26 U.S.C. §§ 7434(f), 6724(d)(1)(A)(vii), 6051(d). An IRS W-2 form is an

information return as defined by 26 U.S.C. § 6724(d)(1). *See Toxqui v. R&P Pizza Corp.*, 2025 WL 2430569, at *14 (S.D.N.Y. Aug. 22, 2025). "[S]ection 7434(a) creates a private cause of action only where an information return is fraudulent with respect to the amount purportedly paid to the plaintiff." *Pacheco v. Chickpea at 14th St. Inc.*, 2019 WL 2292641, at *2 (S.D.N.Y. May 30, 2019) (internal citation and quotation marks omitted), *report and recommendation adopted*, 2019 WL 3749318 (S.D.N.Y. Aug. 8, 2019).

Plaintiff alleges that Defendants failed to provide Plaintiff with accurate W-2 forms for all of the tax years of his employment and failed to properly record, account for, and report to the IRS all monies paid to Plaintiff. FAC ¶ 45. This precise formulation has been squarely addressed and rejected in multiple decisions. *See, e.g.*, *Sarr v. VEP Assocs. LLC*, 2024 WL 1251600, at *6 (E.D.N.Y. Mar. 25, 2024) ("Defendants' alleged failure to 'properly record, account for, and report to the IRS' is insufficient to demonstrate Defendants' willful filing of fraudulent tax returns."); *Castro v. Hyper Structure Corp.*, 2022 WL 2467242, at *9 (E.D.N.Y. Mar. 7, 2022) (recommending denial of default judgment where the complaint used the same language).

The cases granting default judgment on Section 7434 claims all share one critical feature absent here: the defendant paid wages partly by check, generated a partial W-2 reflecting only the check payments, and filed that W-2 with the IRS while omitting the cash portion. *See, e.g.*, *Cano v. Tremson Recycling LLC*, 2025 WL 964552, at *3, *12 (S.D.N.Y. Mar. 14, 2025), *report and recommendation adopted sub nom. Gonzalez v. Tremson Recycling LLC*, 2025 WL 964253 (S.D.N.Y. Mar. 31, 2025); *Rosario v. Fresh Smoothies LLC*, 2021 WL 5847633, at *6 (S.D.N.Y. Dec. 9, 2021); *see also Hernandez v. Prime Structure, Inc.*, 2025 WL 1786909, at *9–10 (E.D.N.Y. June 27, 2025) (denying motion to dismiss as to Section 7434 claim with similar

facts). As alleged, Plaintiff's claim leaves unclear "whether [Plaintiff] received W-2 Forms at all, and [Plaintiff] seem[s] to ask the Court to use [D]efendants' alleged 'fail[ure] to [ ] report to the IRS' as evidence that [D]efendants willfully filed fraudulent returns with the IRS under 26 U.S.C. § 7424." *Castro*, 2022 WL 2467242, at *9; *see also id.* ("In light of this, as it stands, the Complaint sits in limbo and permits dual inferences that fraudulent information returns may or may not have been filed.").

Furthermore, Plaintiff's calculations of damages due to FICA violations reflect that no FICA tax contributions were ever paid, suggesting that no W-2 forms were ever received. *See* Dkt. No. 70-11 at 2; FAC ¶¶ 50, 112, 115. The Second Circuit has held that "an allegation that a person intentionally failed to file a required information return does not state a claim under § 7434." *Katzman*, 660 F.3d at 568.[5] Given that "failing to file an information return does not, in itself, give rise to a claim under 26 U.S.C. § 7434," *Shang Zhong Chen v. Kyoto Sushi, Inc.*, 2017 WL 4236556, at *6 (E.D.N.Y. Sept. 22, 2017), the Court concludes that Plaintiff has failed to state a claim under Section 7434.

Plaintiff also fails to establish willfulness. Plaintiff alleges that Defendants "knew they had a legal duty not to misrepresent to the IRS the amount of money they were paying employees," and that Defendants' acts were "willful violations of, or showed reckless disregard for" the provisions of the IRC. FAC ¶ 107. This language "merely parrots" the statutory requirements and thus is conclusory. *See Yahui Zhang v. Akami Inc.*, 2017 WL 4329723, at *5 (S.D.N.Y. Sept. 26, 2017); *see also Osuagwu v. Home Point Fin. Corp.*, 2022 WL 1645305, at

[5] The Second Circuit further explained that this reading is compelled by the overall statutory scheme: Congress separately addressed non-filing in 26 U.S.C. §§ 6721 and 6722, which carry their own penalties but create no private right of action, demonstrating that "Congress knows how to distinguish between the failure to file an information return and the willful filing of a fraudulent information return." *Katzman*, 660 F.3d at 569.

*10 (S.D.N.Y. May 24, 2022) ("The phrase 'willfully filing a fraudulent information return' under Section 7434 requires a showing of deceitfulness or bad faith.") (quoting *Katzman v. Essex Waterfront Owners LLC*, 2010 WL 3958819, at *3 (S.D.N.Y. Sept. 29, 2010), *aff'd*, 660 F.3d 565 (2d Cir. 2011)).

**G. Breach of Contract**

"To prevail on a breach-of-contract claim in New York, a plaintiff must prove: '(1) the existence of a contract, (2) performance by the party seeking recovery, (3) nonperformance by the other party, and (4) damages attributable to the breach.'" *Assure Glob., LLC v. Anderson*, 763 F. Supp. 3d 476, 484 (S.D.N.Y. 2025) (quoting *Moreno-Godoy v. Kartagener*, 7 F.4th 78, 85 (2d Cir. 2021)). In addition, "New York law and the Twombly-Iqbal standards of federal pleading require a complaint to identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached." *Id.* (quoting *Spinelli v. NFL*, 96 F. Supp. 3d 81, 131 (S.D.N.Y. 2015)).

Under FICA, both employers and employees must pay taxes that fund Social Security and Medicare. 26 U.S.C. § 3101 (employee tax); 26 U.S.C. § 3111 (employer tax). Employers are obligated to withhold the employee's share of FICA taxes from wages and remit both the employer's and employee's shares to the government. 26 U.S.C. §§ 3102, 3501.

Plaintiff alleges that when he accepted an offer of employment from Defendants, "the parties entered a contract, and the covenant of good faith and fair dealing implicit therein required Defendants to pay Plaintiff . . . in accordance with all applicable laws," including a duty to abide by the IRC and to pay all required FICA taxes. FAC ¶ 111. Plaintiff further alleges that Defendants breached this duty when they decided to pay Plaintiff in cash and not file proper Form W-2s. *Id.* ¶ 112.

The Eastern District of New York's decision in *Prime Structure* is instructive. There, the court rejected the same theory advanced by Plaintiff, explaining that "[t]he implied covenant [of good faith] can only impose an obligation consistent with other *mutually agreed upon terms in the contract* and cannot add to the contract a substantive provision not included by the parties." *Prime Structure*, 2025 WL 1786909, at *11 (quoting *Childers v. N.Y. & Presbyterian Hosp.*, 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014) (emphasis added)). Because the plaintiff "failed to plausibly allege the existence of an agreement between plaintiff and any defendant, express or implied" and did not "identify any mutually agreed upon terms of the alleged contract sufficient to infer an intention on the part of any defendant to be bound in a contractual relationship," the breach of contract claim was dismissed. *Id.*; *see also Ancile Inv. Co. Ltd. v. Archer Daniels Midland Co.*, 784 F. Supp. 2d 296, 304–06 (S.D.N.Y. 2011) (dismissing breach of contract claim where the plaintiff did not allege facts suggesting that the defendant intended to be bound to the terms of the alleged implied contract). For the same reasons set forth in *Prime Structure*, Plaintiff fails to state a viable claim for breach of contract.

### H. Unjust Enrichment

"Unjust enrichment is a New York common law quasi-contract cause of action requiring the plaintiff to establish: (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Prime Structure*, 2025 WL 1786909, at *11 (citing *Myun-Uk Choi v. Tower Rsch. Cap. LLC*, 890 F.3d 60, 69 (2d Cir. 2018)). "The exclusive remedy for a tax refund is an action against the United States, thus a state law claim seeking a federal tax refund is preempted." *Id.* (citing *McNeely v. Metro. Life Ins. Co.*, 376 F. Supp. 3d 225, 230 (S.D.N.Y. 2019)). "[T]he IRC does not explicitly create a private cause of action whereby an employee may sue an employer for a failure to make a required contribution."

*Id.* (quoting *Ferro v. Metro Ctr. for Mental Health*, 2014 WL 1265919, at *5 (S.D.N.Y. Mar. 27, 2014)).

Plaintiff alleges that Defendants were unjustly enriched when they kept for themselves money that should have been paid to the IRS as Defendants' employer FICA contribution. FAC ¶ 115. Plaintiff further alleges that this came at the expense of Plaintiff because he will either "(1) be liable to the IRS for the employer's share or (2) upon retirement suffer from diminished Social Security and Medicare benefits because [he] did not pay enough into the system." *Id.*

*Prime Structure* suggests that even where no FICA taxes were initially paid, if the employee's theory of harm rests on future liability for the employer's share, courts will treat the claim as functionally equivalent to the overpayment scenarios in cases like *McNeely*. In *Prime Structure*, the plaintiff alleged that the defendants' failure to pay FICA taxes would "result in plaintiff being liable for the employer's share of FICA taxes and, upon retirement, diminished Social Security benefits because he did not pay enough into the system." *Prime Structure*, 2025 WL 1786909, at *11. The court reasoned that, as in *McNeely* where plaintiffs argued that the defendant did not collect or pay FICA taxes, resulting in plaintiffs paying the combined employer and employee amounts, "plaintiff similarly allege[d] that he overpaid FICA taxes to the IRS, therefore his unjust enrichment claim essentially seeks a disguised tax refund." *Id.* (citing *Lehman v. USAIR Grp., Inc.*, 930 F. Supp. 912, 916 (S.D.N.Y. 1996)). Here too, "[t]he proper avenue for Plaintiff to recover the employer's share of FICA taxes is to file a claim for a tax refund through the IRS's administrative process." *Id.* Accordingly, Plaintiff's unjust enrichment claim is preempted by federal law and thus fails to state a claim for relief.

## II. Damages[6]

### A. Back Wages

An employee who brings an action under the FLSA or the NYLL for unpaid wages must prove that he performed the work and was not compensated properly for his time. *See Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87–88 (2d Cir. 2003). While the FLSA requires an employer to "make, keep, and preserve" records of employee wages, hours, and employment conditions, 29 U.S.C. § 211(c),"[w]hen an employer fails to maintain accurate and complete records of the hours employees work and the amounts they are paid, the plaintiff-employee need only to submit 'sufficient evidence from which violations of the [FLSA] and the amount of an award may be reasonably inferred,'" *Gonzalez v. Masters Health Food Serv. Inc.*, 2017 WL 3835960, at *16 (S.D.N.Y. July 27, 2017) (alteration in original) (quoting *Reich v. S. New England Telecomms. Corp.*, 121 F.3d 58, 66 (2d Cir. 1997)).

If an employee makes this showing, "[t]he burden then shifts to the employer to come forward with evidence either to show 'the precise amount of work performed,' or to 'negative the reasonableness of the inference to be drawn from the employee's evidence.'" *Gonzalez*, 2017 WL 3835960, at *16 (quoting *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011)). "If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result may be only approximate." *Id.* (quoting *Kuebel*, 643 F.3d at 362).

"A similar standard applies to unpaid compensation claims under NYLL." *Id.*; *see also Garcia v. JonJon Deli Grocery Corp.*, 2015 WL 4940107, at *4 n.8 (S.D.N.Y. Aug. 11,

---

[6] Figures in the following tables are rounded to the second decimal place for display purposes. The totals were calculated before rounding the input values, however, and therefore the figures may not sum due to rounding.

2015) ("Courts use the same burden-shifting framework [as in the FLSA] to determine liability for unpaid overtime under the NYLL."). "But under the NYLL, an employer who fails to keep accurate records shoulders a more stringent burden of proof." *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017). "NYLL § 196-a provides that where an employer fails to 'keep adequate records or provide statements of wages to employees as required' by the statute, the employer 'shall bear the burden of proving that the complaining employee was paid wages, benefits and wage supplements.'" *Canelas v. World Pizza, Inc.*, 2017 WL 1233998, at *9 (S.D.N.Y. Mar. 31, 2017) (quoting NYLL § 196-a(a)). And "[i]f an employer cannot satisfy its burden under the FLSA, it cannot satisfy the 'more demanding burden' of the NYLL." *Id.* (quoting *Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005)). Even if an employer is liable under both statutes, a plaintiff may only recover damages under either the FLSA or NYLL. *See Jrpac*, 2016 WL 3248493, at *31.

Defendants failed to defend against this action and did not provide Plaintiff with pay records. Instead, Plaintiff has submitted an affirmation attesting to the number of hours worked per week along with his hourly pay. *See generally* Garcia Aff.; *see also* Dkt. No. 70 ("Lee Aff.").

Plaintiff's damages chart calculates damages from May 14, 2019 to August 15, 2022, *see* Dkt. No. 70-11, the entire period of which is recoverable under the NYLL's six-year statute of limitations. *See Rodriguez v. MRC Bakery Corp.*, 802 F. Supp. 3d 393, 419–20 (E.D.N.Y. 2025) ("Although the statute of limitations bars recovery under the FLSA for his time worked prior to June 27, 2021, the entire period of Plaintiff's employment is recoverable under the NYLL's six-year statute of limitations."); *see also Gamero*, 272 F. Supp. 3d at 498 ("If a plaintiff is entitled to damages under both federal and state wage law, the Court has discretion to award that plaintiff

damages under the statute providing the greatest amount of relief." (citation modified)); *Jrpac*, 2016 WL 3248493, at *31 ("Plaintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA, both because of the higher minimum wage that governed during certain periods and because of the longer period covered by the NYLL.").

In the absence of objection, the Court accepts these estimates. *See Cortez*, 2025 WL 1251297, at *7 (accepting plaintiff's sworn declaration providing best estimates of days and hours worked); *see also Teofilo v. Real Thai Cuisine Inc.*, 2021 WL 22716, at *4 (S.D.N.Y. Jan. 4, 2021) (accepting sworn estimates where pay records produced by defendants did not reflect days or hours worked).

**1. Unpaid Wages (Pre- and Post-Shift Work)**

To calculate the unpaid overtime wages due to time-shaving, the Court determines the difference between what Plaintiff should have been paid under the NYLL and what he was actually paid. Plaintiff alleges that he was not paid for his pre- and post-shift work. For any hours worked beyond a forty-hour week, which Plaintiff alleges is every week, the Court applies the applicable overtime rate, which is one-and-a-half times the applicable wage; in this case, the applicable wage varies from $16.29 to $18.00 per hour depending on the year, making the overtime rate range from $24.43 to $27.00. *See Nana v. Le Viking LLC*, 2019 WL 3244181, at *3 (S.D.N.Y. July 19, 2019), *report and recommendation adopted* (Oct. 28, 2019) (where the employee has been paid below the minimum wage, "the appropriate overtime rate [is] one-and-a-half times the minimum wage rate").[7] As outlined below, the Court finds that Plaintiff is owed $23,673.27 in back wages for pre- and post-shift work.

---

[7] Defendants compensated Plaintiff with a starting rate of $14.00 per hour in 2015, which rose to $18.00 per hour in 2022 after receiving a pay raise each January. FAC ¶ 44. Plaintiff assumes that his wage rate increased by the same amount each year between 2015 and his termination in 2022, meaning approximately $0.57 per year. Dkt. No. 69 at 3–4. This operating assumption is

| Pay Period | Weeks | Time-Shaved Overtime Hours Per Week[8] | Proper Overtime Pay Rate | Total Pay Owed |
|---|---|---|---|---|
| 5/14/2019 to 12/31/2019 | 33.14 | 5.42 | $24.43 | $4,385.51 |
| 1/1/2020 to 12/31/2020 | 52.29 | 5.42 | $25.29 | $7,161.28 |
| 1/1/2021 to 12/31/2021 | 52.14 | 5.42 | $26.14 | $7,383.80 |
| 1/1/2022 to 8/15/2022 | 32.43 | 5.42 | $27.00 | $4,742.68 |
| Total | | | | $23,673.27 |

### 2. Unpaid Overtime Premiums

Aside from the pre- and post-shift work, Plaintiff alleges that he worked an average of eighty hours per week total and thus an average of forty overtime hours per week due to the second shifts. FAC ¶ 41; Garcia Aff. ¶ 3; Dkt. No. 69 at 4. Plaintiff further alleges he was paid all hours at the same straight-time rate, and he is owed forty hours of overtime premiums for

---

reflected in the wage rates in Plaintiff's damages calculations during the NYLL statutory period, starting May 14, 2019. Dkt. No. 70-11.

[8] Plaintiff worked approximately ten shifts per week (consisting of one scheduled shift each day of the week, plus a second scheduled shift on up to five days per week; for purposes of this calculation, assuming an average of three second shifts per week). FAC ¶ 41; Garcia Aff. ¶¶ 3, 5. Plaintiff was always required to show up to work 10 minutes early each day and to stay anywhere from 15 to 30 minutes after, averaging 32.5 minutes for each shift. FAC ¶ 42; Garcia Aff. ¶ 5.

each week of his employment. Garcia Aff. ¶ 6; Dkt. No. 69 at 4. As outlined below, the Court finds that Plaintiff is owed $58,272.65 in back wages for the second shifts.

| Pay Period | Weeks | Overtime Hours Per Week | Actual Overtime Pay Rate | Proper Overtime Pay Rate | Difference in Rates Owed | Total Pay Owed |
|---|---|---|---|---|---|---|
| 5/14/2019 to 12/31/2019 | 33.14 | 40 | $16.29 | $24.43 | $8.14 | $10,795.10 |
| 1/1/2020 to 12/31/2020 | 52.29 | 40 | $16.86 | $25.29 | $8.43 | $17,627.76 |
| 1/1/2021 to 12/31/2021 | 52.14 | 40 | $17.43 | $26.14 | $8.71 | $18,175.51 |
| 1/1/2022 to 8/15/2022 | 32.43 | 40 | $18.00 | $27.00 | $9.00 | $11,674.29 |
| Total | | | | | | $58,272.65 |

**3. Unpaid Spread of Hours Premiums**

As discussed above, "[a]n employee shall receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which: (a) the spread of hours exceeds 10 hours; or (b) there is a split shift; or (c) both situations occur." N.Y.C.R.R. § 142-2.4. Plaintiff alleges that he worked in excess of ten or more hours per day, sometimes up to five days per week, during the relevant statutory period. FAC ¶ 41; Garcia Aff. ¶¶ 3, 7. Plaintiff is entitled to spread of hours damages as follows:

| Pay Period | Weeks | Spread Days Per Week | Minimum Wage | Total Pay Owed |
|---|---|---|---|---|
| 5/14/2019 to 12/31/2019 | 33.14 | 3 | $15.00 | $1,491.43 |
| 1/1/2020 to 12/31/2020 | 52.29 | 3 | $15.00 | $2,352.86 |
| 1/1/2021 to 12/31/2021 | 52.14 | 3 | $15.00 | $2,346.43 |
| 1/1/2022 to 8/15/2022 | 32.43 | 3 | $15.00 | $1,459.29 |
| Total | | | | $7,650.00 |

**B. Liquidated Damages**

Under Section 663 of the NYLL, Plaintiff is also entitled to liquidated damages "equal to one hundred percent of the total of such underpayments found to be due," unless the employer can prove "a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL § 663(1); *see also Rana v. Islam*, 887 F.3d 118, 122–23 (2d Cir. 2018) (describing legislative history of general liquidated damages provision in NYLL § 198). To present this defense, the employer must demonstrate that it "took 'active steps to ascertain the dictates of the FLSA and then act to comply with them.'" *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 150 (2d Cir. 2008) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999)). The employer must also show that it had "objectively reasonable grounds" for believing that it was in compliance with the FLSA. *Herman*, 172 F.3d at 142–43. Even

where a defendant employer has appeared in the action, the Second Circuit has observed that "the employer's burden [is] 'a difficult one,' emphasizing that 'double damages [are] the norm and single damages the exception.'" *Barfield*, 537 F.3d at 150 (quoting *Herman*, 172 F.3d at 142). Defendants have not appeared in this action nor presented such a defense. Accordingly, Plaintiff is entitled to a liquidated damages award in the amount of 100% of back wages, or $89,595.92. *See Cortez*, 2025 WL 1251297, at *8 (awarding liquidated damages where defendant did not appear); *Jimenez*, 744 F. Supp. 3d at 255 (same).

**C. Statutory Damages**

The NYLL requires employers to provide wage notices to employees at the time of hiring and to issue accurate wage statements at the time wages are paid. *See* NYLL §§ 195(1)(a), (3). The Court has found that Defendants failed to provide Plaintiff with wage notices or accurate wage statements, and that Plaintiff has standing to pursue both claims. *See supra* I.E; FAC ¶¶ 55–56.

NYLL § 198(1-b) entitles employees to recover wage-notice statutory damages of $50 "for each work day that the violations occurred or continue to occur," for a maximum of $5,000. NYLL § 198(1-b). NYLL § 198(1-d) entitles employees to recover wage-statement statutory damages of $250 "for each work day that the violations occurred or continue to occur," also capped at $5,000. NYLL § 198(1-d); *see Zurita v. 3275 Chicken Corp.*, 2026 WL 636853, at *5 (S.D.N.Y. Mar. 6, 2026).

Defendants failed to provide Plaintiff with the required wage notices and wage statements for approximately 1,190 work days. FAC ¶¶ 51–52, 58; Garcia Aff. ¶¶ 9, 13–14; Dkt. No. 70-11; *see Hristova v. 3321 Astoria Inc.*, 2018 WL 4006880, at *6 n.2 (E.D.N.Y. June 27, 2018) ("Although the NYLL does not provide a precise definition of 'work day,' courts in this Circuit regularly calculate NYLL statutory damages by defining a 'work day' as a day that the employee

actually worked."). Accordingly, he is entitled to a $5,000 award for violations of NYLL § 195(1). Additionally, since "Defendants failed to provide Plaintiff[] with the . . . required wage statements for more than twenty days," he is entitled to "the maximum statutory damage award of . . . $5,000 for violations of NYLL § 195(3)." *Diaz v. Rene French Cleaners, Inc.*, 2022 WL 4646866, at *11 (E.D.N.Y. Aug. 29, 2022), *report and recommendation adopted*, 2022 WL 4662247 (E.D.N.Y. Sept. 30, 2022); *see also Hosseini*, 2023 WL 7128092, at *7; *Ayala v. P&N Cuisine Inc.*, 2022 WL 3327544, at *4 (S.D.N.Y. July 13, 2022), *report and recommendation adopted sub nom. De Jesus v. P&N Cuisine Inc.*, 2022 WL 3294674 (S.D.N.Y. Aug. 11, 2022); *Khan v. AC Auto., Inc.*, 2021 WL 2036706, at *4 (S.D.N.Y. May 21, 2021). Plaintiff is thus entitled to a total of $10,000 in statutory damages.

**D. Pre- and Post-Judgment Interest**

Plaintiff seeks both pre-judgment and post-judgment interest in his prayer for relief. FAC at 29. Plaintiff, however, did not address interest in his proposed default judgment, memorandums of law, or affirmation. Because Plaintiff does not advance an argument in support of his request for pre-judgment interest, Plaintiff has abandoned this claim. *Jimenez*, 744 F. Supp. 3d at 255–56 (collecting cases); *see also Zepeda v. Halftime Bar & Grill Corp.*, 2023 WL 266504, at *2 (E.D.N.Y. Jan. 18, 2023) ("The Court does not award Plaintiff prejudgment interest because, while she requested prejudgment interest in the operative Complaint, she appears to have abandoned that request in the instant default judgment motion.").

28 U.S.C. § 1961 "ensures that an award of post-judgment interest is mandatory in any civil case where money damages are recovered." *Cortez*, 2025 WL 1251297, at *9 (quoting *Campos Marin v. J&B 693 Corp.*, 2022 WL 377974, at *13 (S.D.N.Y. Jan. 21, 2022), *report and recommendation adopted*, 2022 WL 374522 (S.D.N.Y. Feb. 7, 2022)). The Second Circuit has also stated that "an award of postjudgment interest is mandatory." *Schipani v. McLeod*, 541 F.3d

158, 165 (2d Cir. 2008). Plaintiff is therefore entitled to post-judgment interest, which shall accrue from entry of judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

**III. Attorneys' Fees and Costs**

"Under both the FLSA and the NYLL, a prevailing plaintiff may recover [his or] her reasonable attorney's fees and costs." *Almanzar v. 1342 St. Nicholas Avenue Rest. Corp.*, 2016 WL 8650464, at *12 (S.D.N.Y. Nov. 7, 2016) (quoting *Najnin v. Dollar Mountain, Inc.*, 2015 WL 6125436, at *4 (S.D.N.Y. Sept. 25, 2015)); *see* 29 U.S.C. § 216(b); NYLL § 198(1-a). "The Court has discretion to determine the amount of attorneys' fees that would be appropriate to satisfy a fee award." *Almanzar*, 2016 WL 8650464, at *12 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

As a general matter, the "starting point" in analyzing whether claimed attorneys' fees are appropriate is "the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see generally Lilly v. City of New York*, 934 F.3d 222, 227–34 (2d Cir. 2019) (discussing calculation of reasonable hourly rates and reasonable number of hours expended). The party seeking fees bears the burden of demonstrating that its requested hours and hourly rates are reasonable, *see Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 512 (S.D.N.Y. 2011), and must provide the court with sufficient information to assess the fee application, *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983).

Plaintiff does not submit any documentation in support of his motion for attorneys' fees and thus does not permit the Court to determine whether the rate or hours worked by Plaintiff's

counsel is reasonable, or whether the requested fees accurately reflect the work performed on this case. Accordingly, the request for attorneys' fees and costs is denied without prejudice. Plaintiff may submit a motion under Federal Rule of Civil Procedure 54(d)(2) for attorneys' fees and costs. The motion should clearly and accurately state the activities of each attorney who worked on the matter, with hourly rates reflecting their respective experience, and should be accompanied by contemporaneous time records. *See Strauss v. Little Fish Corp.*, 2020 WL 4041511, at *9 (S.D.N.Y. July 17, 2020) (requiring contemporaneous time records to support fee application in context of *Cheeks* hearing).

**CONCLUSION**

Plaintiff's motion for default judgment is GRANTED IN PART and DENIED IN PART. Plaintiff is entitled to relief on his claims for back wages, liquidated damages, and wage notice and wage statement violations. Plaintiff's motion is denied with respect to the claims for fraudulent filing of information returns, breach of contract, and unjust enrichment. Plaintiff's request for attorneys' fees and costs is denied without prejudice to a motion under Rule 54(d)(2).

The Clerk of Court is respectfully directed to enter judgment in favor of Plaintiff and awarding damages as follows:

- $89,595.92 in back wages under the NYLL;
- $89,595.92 in liquidated damages;
- $5,000 for Defendants' violation of NYLL § 195(1), and $5,000 for Defendants' violation of NYLL § 195(3); and
- Post-judgment interest pursuant to 28 U.S.C. § 1961.

The Court directs Plaintiff to transmit a copy of this Opinion and Order to Defendants through any means they have previously used to communicate with Defendants.

The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: July 30, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge